COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| IN RE | § | No. 08-19-00151-CR |
| | § | |
| THE STATE OF TEXAS, | § | AN ORIGINAL PROCEEDING |
| | § | |
| Relator. | § | IN MANDAMUS |
| | § | |

## O P I N I O N

At the outset, this mandamus looked to test the limits to which a trial court can order the State to respond to expert-witness discovery in a criminal case. Based on the Michael Morton Act's amendments to Article 39.14 of the Texas Code of Criminal Procedure, the trial court ordered the State to comply with what might be viewed as broad discovery requests. To challenge that order, the State filed this mandamus action against the Honorable Francisco X. Dominguez, Judge of the 205th District Court of El Paso County, Texas (Respondent). But after scrutinizing what the State has already produced, what the real party in interest concedes that it has already obtained, and the concessions made at oral argument, we conclude that the few items of discovery that are still outstanding should be produced, but for a different reason than expressed by the trial court. We are also asked to address the thorny question of whether a party must disclose the prior testimonial history of its expert witnesses. We conclude that question has been mooted by what

the defendant has already obtained in discovery through his own efforts. The mandamus petition is denied.

## I. BACKGROUND

The State of Texas indicted James Heredia on two counts of engaging in organized criminal activity. The indictment arose out of an on-going conflict between the Bandidos Outlaw Motorcycle Gang, and the Traviezos Motorcycle Club. Heredia is alleged to have committed an aggravated assault with a deadly weapon (Count I) and assault (Count II) and did so as a member of a criminal street gang. Accordingly, his alleged membership in the Bandidos, its status as a possible criminal street gang, and his actions in furtherance of that group are elements of the charged offense. *See* TEX.PENAL CODE ANN. § 71.02(a)(1) ("A person commits an offense if, with the intent to establish, maintain, or participate . . . as a member of a criminal street gang, the person commits or conspires to commit one or more of the following: . . . aggravated assault . . . [.]").

Heredia's was one of ten pending or dismissed cases arising from the same incident that gave rise to the accusations in this case. One of those other cases went to trial, but the jury was unable to reach a unanimous verdict. During that trial, the State offered expert witness testimony on the history and organization of the Bandidos Outlaw Motorcycle Gang. In anticipation of similar expert witness testimony, Heredia filed several discovery motions in this case, each directed to the claim that Heredia is a member of a criminal street gang. As we detail below, the requests sought the opinions of the State's experts, the material that the experts may have reviewed in forming those opinions, background information on the experts, and a listing of prior testimony they have given, along with transcripts of that testimony. The State resisted the discovery motions, and the trial court held several hearings to resolve the discovery dispute.

2

On May 2, 2019, the trial court issued an order granting Heredia's motions with certain caveats. The order rejected the State's position that a criminal defendant does not have a general right to discovery of expert witness related evidence, and concluded that the Michael Morton Act, which amended Article 39.14 of the Texas Code of Criminal Procedure, authorized the discovery sought:

> The Court is of the opinion that the enactment of the Michael Morton Act was not a mere exercise in legislative folly, but rather, an earnest response to serious concerns that wrongful convictions occur when excessively restrictive discovery procedures go unchecked. Unilateral and unchecked decisions by prosecutors to determine what is "exculpatory" and "material," and whether specific pieces of evidence may be "mitigating" or will tend to negate the guilt of a defendant or reduce the punishment of the offense charged lead to a dangerous slippery slope that defeats the very purpose of the Michael Morton Act.

Accordingly, the trial court ordered the State to comply with the following production requests as they pertained to two State designated experts, officers Frank Balderrama and Matt Kennedy, who were designated to testify as gang experts.[1] We add bolded text to show specific limitations imposed by the trial court on the requests:

1. Disclosure of, and the latest curricula vitae/resume, with date of preparation for each person involved in any investigation, evaluation, physical or medical examination, and/or forensic testing of any kind in the instant case or any related case and all expert witnesses the State intends to call at trial or at any hearing in this case or any **[of the ten]** related case[s].

2. . . . **[Within the time frame of five (5) years prior to August 3, 2016]** disclose the number of times each expert has been qualified as an expert witness in Federal, state, or administrative courts, the types of court in which each witness has testified the locations (city and state/territory/county) of each court, and the civil and criminal docket number of each case.

3. . . . [I]dentify by cause number and name of Defendant all related cases in which EPPD Officer Francisco J. Balderrama #2990 has testified. This request

---

[1] The order states: "Here, Defendant Heredia is not seeking discovery of every testifying expert for the El Paso Police Department, but only the two experts identified by the State as testifying experts." Thus, we read the order to limit discovery to these two experts, other than for two of the requests that expressly limit themselves to only Officer Balderrama.

includes all **[ten]** related cases of co-defendants or associated persons or those involved in any alleged controversy between the "Bandidos Outlaw Motorcycle Gang (OMG) and the Traviezos Motorcycle club."

4. . . . [P]roduce written transcripts of the testimony of EPPD Officer Francisco J. Balderrama #2990 in all cases responsive to request #3.

5. . . . [Disclose] any reports, information, evidence, publications (with citations), unpublished studies, and any other material considered by the expert in the preparation of any memorandum, correspondence, report, evaluation, and/or opinion **[in the instant case and all ten related cases]** prior to testifying.

6. [Produce notice] of any professional sanction of any kind, formal or informal, imposed upon or given by any governmental regulatory body, professional association, or professional publications, to any person involved in any evaluation, physical or medical examination, and/or testing or to any expert witness to be called in the instant case or related case by the State.

7. If any expert's testimony will be different from that contained in any expert's memorandum, correspondence, report, evaluation, and/or opinion or the substance of the testimony is not contained in such, disclosure in writing of the substance of the expert's proposed testimony, the expert's opinion, and the underlying basis/bases for that opinion.

In reaching its order, the trial court acknowledged that it took care and expended a "great deal of time to review and address the arguments raised by the State and defense in this case." Nothing in our record suggests otherwise. In support of its order, the trial court concluded that the evidence sought was material to the issues raised by the case:

> To obtain discovery under Article 39.14, a defendant must establish that the item is material to his defense, and the item is possessed by the State. When the evidence the defendant seeks to inspect or test is in itself indispensable to the State's case, the materiality standard is met by the simple fact that exclusion of the evidence would affect the essential proof that the appellant committed the offense.
>
> In the case at hand, a crucial element of the State's case is to establish that the Bandidos Outlaw Motorcycle Gang is a criminal street gang. In order to establish this element, the State relies on its gang experts. Thus, Defendant has met his burden that challenging the gang experts' qualifications is material to his defense, and has further established that challenging the gang experts' knowledge or expert opinion about this particular defendant's involvement or association with the Bandidos Outlaw Motorcycle Gang is material to his defense. (case citations omitted)

4

Following the issuance of this order, the State filed a petition for a writ of mandamus. The trial court stayed proceedings pending our resolution of this mandamus action.

## II. DISCUSSION

The State concedes that the trial court had the authority under Article 39.14(b) to order the disclosure of the names, addresses, and resumes of the State's gang-expert witnesses (request #1) and under *Brady v. Maryland* to order the disclosure any professional sanctions rendered against those expert witnesses (request #6). But the State urges that the trial court was without lawful authority to order: the disclosure of prior instances of expert witness court testimony (request #2); a list of cases in which Officer Balderrama had previously testified (request #3); written transcripts of Officer Balderrama's prior testimony (request #4); material relied on by the experts (request #5); and disclosure of the substance of the expert's proposed testimony (request #7).

The State offers one global rationale to invalidate these requests. It contends that Article 39.14(b) sets out the entire scope of permissible discovery with respect to expert witnesses in criminal cases, and that subsection, by its plain text, only requires the disclosure of the expert's name and address. Hence, the State contends that it need produce nothing more. The State buttresses that claim by pointing to a prior decision of this Court applying a prior version of Article 39.14. *See In re State*, No. 08-12-00177-CR, 2013 WL 1846680, at *3 (Tex.App.--El Paso Apr. 30, 2013, orig. proceeding) (not designated for publication). The State also raises specific objections to the specific requests. We address each of these arguments in turn.

### A. Standard of Review

To obtain mandamus relief, the State must show (1) that it has no adequate remedy at law and (2) that it seeks to compel a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122

5

(Tex.Crim.App. 2013) (orig. proceeding).  Neither party disputes that the State has no adequate remedy by appeal here because the State cannot appeal the trial court's decision.  Therefore, the focus of this action is on the second prong of the mandamus test: the ministerial act requirement.

The State meets the ministerial act prong if it can show "a clear right to the relief sought," meaning that "the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Id.* (internal quotation marks omitted); *see also State ex rel. Mau v. Third Court of Appeals*, 560 S.W.3d 640, 644 (Tex.Crim.App. 2018) (noting that a ministerial act does not involve "discretion or judicial decision making" and the law must be "definite and unambiguous, and that 'unquestionably applies to the indisputable facts of the case'").  Issues of first impression can sometimes form the basis for valid mandamus relief "when the factual scenario has never been precisely addressed but the principle of law has been clearly established." *Weeks*, 391 S.W.3d at 122.

And as a general proposition, "[i]f the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained." *See, e.g.*, *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000); *see also Weeks*, 391 S.W.3d at 129 n.10 (Price, J., dissenting) (stating that the principle that a court will uphold a ruling with the correct result, but for the wrong reason "would apply in spades in the milieu of mandamus proceedings.  We should be able to say that a trial court's judicial decision is not only unjustified, but *unjustifiable,* before we are willing to hold that he had a *ministerial* duty to decide otherwise.").

**B.  Controlling Law**

A criminal defendant in Texas possesses a cluster of discovery rights defined by constitutional case law and the Texas Code of Criminal Procedure. *See*, *e.g.*, TEX.CODE

CRIM.PROC.ANN. art. 24.02 (dealing with subpoenas duces tecum); art. 39.02 (procedures for taking depositions in criminal cases); art. 39.14 (discovery). While a defendant does not have a general right to discovery of evidence in the possession of the State, a defendant has the constitutional right to discovery of *exculpatory* or *mitigating* evidence in the State's possession, custody, or control. *See In re State*, 162 S.W.3d 672, 676 (Tex.App.--El Paso 2005, orig. proceeding). Additionally, Article 39.14 of the Texas Code of Criminal Procedure also provides the defendant with additional statutory discovery rights. TEX.CODE CRIM.PROC.ANN. art. 39.14. The State and Heredia both agree that this case ultimately turns not on constitutional grounds but solely on the interpretation of Article 39.14's limits. The question here is whether the trial court exceeded the scope of its authority by ordering discovery beyond what was permitted under Article 39.14.

Three subparts of Article 39.14 are potentially at play in this proceeding. Article 39.14(a) requires the State to produce upon timely request:

> . . . any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action . . .

TEX.CODE CRIM.PROC.ANN. art. 39.14(b).

The State directs us to Article 39.14(b), which in relevant part requires the disclosure of certain expert testimony information:

> On a party's request . . . the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. Except as otherwise provided by this subsection, the disclosure must be made in writing in hard copy form or by electronic means not later than the 20th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin. On motion of a party and

7

on notice to the other parties, the court may order an earlier time at which one or more of the other parties must make the disclosure to the requesting party

*Id*. 39.14(b).

And Heredia, as well as the learned trial judge below, base the production requests on

Article 39.14(h):

Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

*Id.* 39.14(h).

As we explain in more detail below, subdivision (a) was amended, and subdivision (h) was added by the 2014 "Michael Morton Act." *See* Michael Morton Act, 83d Leg., R.S., ch. 49, § 2, 2013 TEX.GEN.LAWS 106, 107. That Act was passed to remedy abuses in the disclosure of information by prosecutors.[2] The Act was intended to not only codify the constitutional requirements laid down more than a half-century ago in *Brady v. Maryland*,[3] but to supplement those requirements. *See Hillman v. Nueces Cty.*, 579 S.W.3d 354, 360 (Tex. 2019) (noting the Michael Morton Act "requires production of several items that previously were not discoverable in criminal cases, including written witness statements, written communications between the State and its agents, and work product.") (internal citations and quotation marks omitted).

Notwithstanding this change in the law, the State here contends that the trial court had a ministerial duty to partially deny Heredia's discovery requests because as to expert witnesses, a

---

[2] The prosecutor in Michael Morton's case withheld information about a van parked outside the Morton address when Michael Morton's wife was killed. The prosecutor also withheld the existence of a bloody bandana near where the vehicle was parked, and a statement from Morton's three year old son--the only eyewitness to the murder--that a "monster" and not his father had committed the crime. *See* Gerald S. Reamey, *The Truth Might Set You Free: How the Michael Morton Act Could Fundamentally Change Texas Criminal Discovery, or Not*, 48 Tex.Tech L.Rev. 893, 901 (2016).

[3] 373 U.S. 83 (1963).

8

defendant is limited to the expert's identity and address, and nothing more. We start with that argument.

### 1. Our 2013 decision in In re State

The State finds support for its limitation on expert discovery in our 2013 opinion in *In re State*, 2013 WL 1846680, at *3. In that case, this Court held that prior to trial, a court could not order the State to disclose the opinions expressed by State's experts or the basis for those expert opinions under Article 39.14 (a) or (b). The facts of that case bear repeating.

*In re State* arose out of a capital murder case where the defendant sought seventeen categories of items from the State's several expert witnesses, notably including:

- a complete statement of all opinions to be expressed and the basis and reasons for each
- the data or other information considered by each expert in forming their opinions
- any exhibits the expert would use
- billing records for the expert and any payments received
- all literature supporting or rejecting the underlying theory, methodology or technique used or relied upon by the expert
- the "names of each person about whom a witness to be called by the State has expressed an opinion in the past and the opinion expressed as to each by the State's witness"
- any standards that control the technique or methodology used to arrive at any opinion that the expert might express at trial
- "a list of each interview conducted by the witness while in the field in which he is to express an opinion" and "the facts in each of the cases in which he conduct those interviews"
- "statistical research performed in the field of expertise with supporting documentation"
- a listing of any other cases in which the witness has testified as an expert at trial or by deposition from 2000 through the date of the trial court's order

2013 WL 1846680, at *1-2.

We concluded that the trial court erred in requiring the production of these materials because nothing in Article 39.14 (a) and (b) authorized the production of this type of information. *See id.* at *3. Nor did Texas Rules of Evidence 104, 702, 703, or 705 provide the trial court with

9

the discretion to order pretrial discovery of the opinions and the underlying data relied on by State experts. *Id*. at *3. The State asserts that the information Heredia seeks here, and that the trial court ordered, is the exact same type of information that we held was not discoverable in *In re State*, meaning that this Court should again grant mandamus relief.

Heredia, however, correctly notes that our April 30, 2013 opinion in *In re State* predated the enactment of the Michael Morton Act by several months. *See* Michael Morton Act, 83d Leg., R.S., ch. 49, § 2, 2013 TEX.GEN.LAWS 106 (eff. Jan. 1, 2014). Article 39.14 previously only contained two subsections that defined the scope of discovery in criminal cases: Subsection (a) which upon a showing of good cause, required the State to inspect and copy certain unprivileged, non-work product materials and evidence; and Subsection (b) which required both the State and the defendant to disclose the name and address of each person the disclosing party may use at trial to present expert testimony. *See* Act of May 18, 2009, 81st Leg., R.S., ch. 276, § 2, 2009 TEX.GEN.LAWS 732, 733. However, the Michael Morton Act amended Article 39.14(a) and added subsection (h). The other twist to this case is that much of the material that Heredia seeks is encompassed by categories of documents now expressly allowed under subsection (a). Because we are reviewing a different statute, and on a different record, our holding in *In re State* does not necessarily control the outcome here. Instead, we turn to the specific discovery requests with an eye towards what documents Heredia is actually seeking.

### 2. *Prior testimony*

From the discovery order, request #2 seeks the number of times and the types of cases that Officers Balderrama and Kennedy have previously been qualified as experts. Request #3 would have the State identify by cause number each related case in which Officer Balderrama has testified. And request #4 seeks transcripts of Officer Balderrama's testimony as identified in

request #3. The trial court defined "related cases" to mean the ten cases arising from the same incident relevant to this case. And significant to our disposition, the trial court limited its request to the two specific designated experts. At oral argument, Heredia informed the court that the resumes produced in response to request #1 had a listing of prior testimony already attached to them. Heredia's counsel also informed the court that he had obtained copies of the transcripts of the expert's testimony on his own.[4] We raised and asked for post argument briefing on whether these requests still present a live controversy, or at least one worthy of mandamus relief.

In post argument briefing, the State claims there is still a live dispute because the very fact that the trial judge entered the order presupposes that the judge felt additional materials needed to be produced. And the State fears a claimed failure to produce material might jeopardize the admissibility of the experts' opinions. We disagree. First, it is unclear that the trial judge was of that belief, and Heredia's concession at oral argument to our Court (and in the hearing transcripts below) belies that there is real dispute regarding the transcripts. Moreover, Heredia does not urge in his post-submission brief that any additional material is due, he only desires the order so the "State is aware of a continuing obligation to amend, modify, or supplement these discovery disclosures in the future should circumstances change." However, an actual controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004) ("A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution."). Courts do not have authority to provide advisory opinions, or to decide cases on hypothetical or contingent facts. *See General Land Office of Texas v. OXY U.S.A., Inc.*,

---

[4] The State agreed with this claim in its mandamus petition, stating: "The record further shows that Heredia has obtained, on his own, the transcripts of the State's gang-experts' prior testimony in other cases. *See* (RR4 at 6-7). This part of the Respondent trial court's discovery order is thus unnecessary."

11

789 S.W.2d 569, 570 (Tex. 1990); *Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.--El Paso 2010, no pet.). We have previously applied these principles to the criminal cases that come before us. *See State v. Mendoza*, No. 08-09-00175-CR, 2014 WL 3762971, at *2 (Tex.App.--El Paso July 30, 2014, pet. ref'd) (not designated for publication) (declining on mootness grounds to rule on motion to suppress); *Avelar v. State*, No. 08-11-00292-CR, 2013 WL 5657963, at *3 (Tex.App.--El Paso Oct. 16, 2013, no pet.) (not designated for publication) (declining on mootness grounds to resolve question of defendant to reimburse the county for court-appointed attorney's fees when he was not required to reimburse the fees). Because the claimed controversy over the prior testimony is hypothetical at best, we find the issues surrounding requests #2, #3, and #4 are moot.[5]

### 3. Information that the experts rely on

Under the discovery order, request #5 seeks information that the experts considered in forming their opinions. To appreciate the scope of that request, we add a bit of context. James Heredia was charged with committing an aggravated assault with a deadly weapon, and in a separate count, doing so as a member of the Bandidos Outlaw Motorcycle Gang, an alleged criminal street gang. The State designated Officers Balderrama and Kennedy to testify as gang experts. They presumably could offer one or more of these opinions: (1) the Bandidos are a criminal street gang, (2) Heredia was a member of that gang, and (3) his actions were in furtherance of the Bandidos activities. Gang experts typically support opinions of this sort through their own experience, training, education, identification of a gang's emblemata (tattoos, clothing, or

---

[5] That being said, discovery of an expert's prior testimony is a troubling issue. Many experts testify throughout the 254 Texas counties, and some outside the State. Some experts may have accurate records or a recollection of when and where they testified, but others not. How would an El Paso County District Attorney be able to certify that he or she has obtained a complete and accurate listing of every other proceeding at which an expert has testified when that expert may have testified throughout the state, or even the country? Ideally, Texas might address that issue through a rule change. But until then, we would trust trial judges to take account of the considerable burden a request such as this imposes, as the trial judge did here by limiting the request to ten specific related cases.

markings), and possibly whether the individual appears in a criminal street gang database. *See, e.g.*, *Zuniga v. State*, 551 S.W.3d 729, 737-38 (Tex.Crim.App. 2018) (describing basis for gang expert's testimony); *Comptois v. State*, No. 08-16-00240-CR, 2018 WL 4042676 *3 (Tex.App.-- El Paso, Aug. 24, 2018, pet. ref'd) (not designated for publication) (describing expert's interpretation of tattoos).

Inclusion in the database is dictated by statute, with its own set of specific factors. TEX.CODE CRIM.PROC.ANN. art. 67.051(b) (requiring creation of intelligence database); art. 67.054 (setting out ten submission criteria, including self-admission, prior judgment, identification by reliable informant). That statute expressly contemplates that a defendant might be able to obtain discovery of database information through Chapter 39. TEX.CODE CRIM.PROC.ANN. art 67.101 ("On request, a criminal justice agency may release information maintained under this chapter to . . . a defendant in a criminal proceeding who is entitled to discovery of the information under Chapter 39."). And it criminalizes misuse of any information so discovered. *See id*. art. 67.103 (A person commits an offense by using information for unauthorized purpose or releasing to someone not entitled to the information).

In this case, Heredia sought to obtain the "gang file" on himself, his co-defendants, and the witnesses from an alleged rival gang involved in the incident. Heredia was able to see his own gang file; the dispute is whether he is entitled to more. Our record does not contain a succinct definition of the gang file, other than it is the compilation of records from the El Paso Police Department for anyone suspected of being a gang member. It might contain arrest reports, incident reports, law enforcement contact reports, police reports, and is apparently tied into the local gang intelligence database. Heredia was also seeking the investigations that Officers Balderrama or Kennedy had done in some twenty to forty other cases. The trial court's order, however, does not

go that far. It limits the other file information to the ten related cases to this incident, and by its wording would not require production of the gang database unless the expert "considered" it in arriving at his opinion that pertains to this case.

The trial court grounded its rationale in Article 39.14(h). That provision requires prosecutors, even without a request or court order, to disclose "any exculpatory, impeachment, or mitigating document, item, or information . . . that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX.CODE CRIM.PROC.ANN. art. 39.14(h). That rationale would assume that gang files would be exculpatory, impeaching, or mitigating and tend to negate guilt or mitigate punishment. The trial court's reliance on 39.14(h) would fit the easy case. Examples might be found or imagined where an expert's file would clearly contain "exculpatory, impeachment, or mitigating" information. For example, and in the context of this case, *if* an expert intended to testify that a particular tattoo indicated membership in the Bandidos, but the prosecutor knew the same expert had written something stating directly to the contrary the month before, the writing would cleanly fit into the wording of Article 39.14(h). And in that case, no request for production or order from the trial court would even be necessary, because Article 39.14(h) requires neither.[6]

---

[6] The State blunts this potential application of Article 39.14(h) by arguing that only Article 39.14(b) governs expert discovery. Otherwise, the State fears that Article 39.14(h) would effectively swallow subsection (b). *See Badgett v. State*, 42 S.W.3d 136, 139 (Tex.Crim.App. 2001) (en banc) (statutes should, if it all possible, be construed to give effect to all of its parts and not render certain provisions void or redundant). We disagree, however, with the State's argument that 39.14(b) is now the sole statutory basis for expert discovery in criminal cases, and that it trumps in all respects 39.14(h). The two subsections are not in conflict; they impose different obligations on different parties in different situations at different times. Subsection (b) imposes mutual obligations on *both* the State and the defense to disclose, *upon motion*, the name and address of each person the other party may use to present expert testimony *within 30 days of trial*. TEX.CODE CRIM.PROC.ANN. art. 39.14(b). By contrast, subsection (h) creates a *continuing* obligation on the State to disclose *evidence* to the defendant regardless of whether trial has begun or not and without the explicit requirement that a motion be pending first. TEX.CODE CRIM.PROC.ANN. art. 39.14(h). Moreover, subsection (h) also contains disjunctive language decoupling it from other provisions of Article 39.14. Subsection (h) applies "notwithstanding" any other provision in Article 39.14 and therefore provides a freestanding basis for discovery. *See Blanco v. State*, No. 08-15-00082-CR, 2017 WL 604050 (Tex.App.--El Paso Feb. 15, 2017, no pet.) (not designated for publication) (recognizing that subsection (h) operates independently of subsections (a) and (b)).

But the application of Article 39.14(h) to expert discovery would not always be that clear, and the language of subsection (h) would not universally sanction the requests for production at issue here. That is to say, the requests here seek both the exculpatory and inculpatory, both the impeaching and the verifying, and both the mitigating and enhancing data upon which the experts may have formed their opinions. Only by ignoring the words "exculpatory, impeaching, and mitigating" could a trial court use Article 39.14(h) to order the production of all the material considered by an expert. And because the State offered, but the trial court did not undertake an *in camera* review in this case, we have no ability to gauge whether the disputed material is in fact exculpatory, impeaching, or mitigating.

But we find a simpler solution to the unique discovery issue here. Much of the information Heredia sought arguably falls within Article 39.14(a) which includes "material to any matter involved in the action" and specifically includes the terms "offense reports" or "witness statements of law enforcement officers." Subsection (a) was also amended through the Michael Morton Act and expanded the kind of materials that a trial court might order produced. Before passage of the Michael Morton Act, a defendant under subsection (a), after a showing of good cause, and subject to a materiality standard, could obtain production of:

> . . . designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged . . .

Act of May 18, 2009, 81st Leg., R.S., ch. 276, § 2, 2009 TEX.GEN.LAWS 732, 733. The Michael Morton Act amended subsection (a) to delete the good cause requirement and now requires the State to produce (after receiving a timely request from the defendant):

> . . . any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books,

15

accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action . . .

Michael Morton Act, 83d Leg., R.S., ch. 49, § 2, 2013 TEX.GEN.LAWS 106, 106. As is evident, the amendments expanded subsection (a) to allow for production of witness statements, law enforcement officer witness statements and offense reports.[7] And review of the hearing suggests the parties were disputing whether the state should produce "police reports" "law enforcement contacts" and "incident reports."

Those materials, of course, would not be subject to production if they are the State's work product, or otherwise privileged. But once the material is relied on by a testifying expert, the work product privilege disappears. *See Pope v. State*, 207 S.W.3d 352, 362 n.28 (Tex.Crim.App. 2006). The court there wrote:

> Article 39.14 of the Code of Criminal Procedure does not provide for mandatory depositions of experts, interrogatories, disclosure of reports or the whole host of other discovery mechanisms available in civil proceedings. That failure, however, does not imply that the work-product doctrine necessarily continues to protect otherwise discoverable materials once the State or defendant designates an expert witness.

*Id.*; *see also* TEX.R.EVID. 705(b) (in a criminal case a party must be permitted to examine the expert about the underlying facts or data). If the information in those materials is something Officers Balderrama or Kennedy reviewed to form their opinions, they cease to be work product, and would fit within the language of Article 39.14(a).

The State argues, however, that the underlying data supporting its expert's opinion is not "material"--a predicate requirement still carried forward under subsection (a). In the State's view, only the expert's ultimate opinion is material because that is the essential proof of the defendant's

---

[7] The prior version of (a) applied to evidence "in the possession, custody, or control of the State or any of its agencies." The Michael Morton Act changed this to evidence "in the possession, custody, or control of the state or any person under contract with the state."

guilt. We disagree. The Court of Criminal Appeals has provided two definitions of materiality. For inculpatory evidence, the court defined materiality to mean evidence indispensable to the State's case. *McBride v. State*, 838 S.W.2d 248, 251 (Tex.Crim.App. 1992) (en banc). For exculpatory, impeaching, or mitigating evidence, the court defined materiality to mean a reasonable probability that disclosure would lead to a different outcome. *See Quinones v. State*, 592 S.W.2d 933, 941 (Tex.Crim.App. 1980) (en banc). One post-Michael Morton Act authority concludes that the Act did not change the statutory definition of the word "material." *See Watkins v. State*, 554 S.W.3d 819, 821 (Tex.App.--Waco 2018, pet. granted and argued February 20, 2019). In another post Michael Morton Act case, the Beaumont court noted that "[e]vidence is material if it affects the essential proof that the defendant committed the offense charged." *In re Hon*, No. 09-16-00301-CR, 2016 WL 6110797, at *1 (Tex.App.--Beaumont Oct. 19, 2016, orig. proceeding) (per curiam) (mem. op., not designated for publication) *citing Ehrke v. State*, 459 S.W.3d 606, 611 (Tex.Crim.App. 2015). The court in *In re Hon*, for instance, concluded that a trial court's order requiring a DPS lab to disclose its internal operating and testing procedures for analyzing breath samples in a DWI case was proper, but proficiency testing of lab staff and evaluation forms for staff (all without a time limit) was not. The former was material, the later failed to meet the materiality standard.

At least in the context of this case, the foundation of a gang expert's opinion is as important as the opinion itself. An expert's naked opinion without any foundation is no evidence at all; it is mere *ipse dixit* ("it is because I say it is."). *See Coble v. State*, 330 S.W.3d 253, 277 and n.62 (Tex.Crim.App. 2010), *citing Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("But it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a

credentialed witness."). Rule of evidence 705 makes this concept clear. At trial, the State would not necessarily have to elicit the underlying facts or data relied on by the expert when sponsoring the expert's opinion, but the expert must, if asked, disclose that material on cross-examination. TEX.R.EVID. 705(a) (so stating). If the underlying facts or data do not support the opinion, the opinion is inadmissible. TEX.R.EVID. 705(c) ("An expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion."). It follows that the underlying facts and data supporting the opinion are as material as the opinion itself. The trial court essentially stated that same reasoning when it concluded the material sought was material.[8]

To support its materiality argument, the State analogizes this case to *In re Hawk*, No. 05-16-00462-CV, 2016 WL 3085673, at *3-4 (Tex.App.--Dallas May 31, 2016, orig. proceeding) (mem. op., not designated for publication). In *In re Hawk*, the Dallas Court of Appeals held that a defendant was not entitled to inspect the chair in which he sat during a DWI blood draw because the chair was not in and of itself the evidence the State would be relying on to prove his guilt. *Id*. The State draws a parallel in this case between the expert's opinions and the data underpinning those opinions, and the blood draw and the chair used to perform the draw. The State here will rely on the expert's opinions, and not the underlying data the experts used, just like the prosecutor in *In re Hawk* relied on the result of the blood draw, and not the paraphernalia used to accomplish it.

---

[8] One other key piece to this puzzle: Heredia is attempting to set a Rule 705 hearing to challenge Officer Balderrama and he subpoenaed all or most of these same documents for that pre-trial hearing. The State quashed the subpoena below, contending that the Rule 705 hearing could not be heard until trial. But in its brief, and at oral argument, the State's counsel agreed that the information which is the subject of this mandamus could be elicited at a Rule 705 hearing. Moreover, the State now concedes that the trial court is within its discretion to set such a hearing before trial and even to conduct the hearing in stages to allow defense counsel the opportunity to first inspect the produced documents before later arguing their significance, if any. To be clear, Rule 705 is not a basis upon which to serve written motions to produce, but when all the material at issue under request #5 would be produced through a pre-trial Rule 705 hearing anyway, the dispute before us becomes more theoretical than practical.

But the analogy falters on closer examination of the case's facts. The defendant from *In re Hawk* sought the actual chair to show "a likelihood that the blood draw room in the jail is a filthy, unsanitary room that causes an unreasonable risk of infection to the persons from whom the blood is being drawn" and that "the conditions in the room were so unsanitary they violated his right under the United States Constitution to be free from unreasonable searches and seizures." *Id.* at *2. The Dallas Court of Appeals held that since a year had passed since the date of the blood draw, the chair was not in substantially the same condition. *Id.* at *3-4. The case is more about the lack of relevance in the connection of one particular piece of evidence to another, than a usable paradigm for judging the materiality of an expert's underlying data.

In summary, we conclude the State did not meet its mandamus burden to show a clear right to relief because: (1) much of the information sought (law enforcement officer witness statements and offense reports) would fall under the text of Article 39.14(a); (2) Article 67.101 expressly contemplates that a gang database might be the subject of discovery under Chapter 39; and (3) in any event, the State has not conceded that its experts have considered the gang data base in forming their opinion, so it is not yet even responsive to the request as worded. Given this background, we cannot conclude that that trial court abused its discretion in issuing request #5.

### 4. Creation of expert reports

The State also argues that at least with respect to request #7, the discovery order is overbroad because it requires the State to create new documents, rather that produce documents that are already its possession or control. We agree with the State that the disclosure requirements of Article 39.14 are limited to pre-existing documents and items already in the State's possession, meaning that the trial court cannot order the State to create a document that is not already in its possession, custody, or control, even after the passage of the Michael Morton Act. *See Coleman*

19

*v. State*, 577 S.W.3d 623, 634 (Tex.App.--Fort Worth 2019, no pet.).  While the State's argument on this point is underdeveloped, consisting of a single sentence asserting that request #7 requires it to create new documents, that request does give us some pause.  It states: "If the expert's testimony will be different from that contained in any expert's memorandum, correspondence, report, evaluation, and/or opinion or the substance of the testimony is not contained in such, disclosure in writing of the substance of the expert's proposed testimony, the expert's opinion, and the underlying basis/bases for that opinion."  At first blush, this item bears similarities to the type of information that a trial court could possibly order created in civil discovery, but not criminal discovery.  *See Coleman*, 577 S.W.3d at 634 (trial court cannot order the creation of material not already in the State's possession under the Michael Morton Act).  And we agree that the rules of procedure in civil cases do not dictate the requirements of criminal discovery.  *See Pope*, 207 S.W.3d at 359-60 and n.28 (contrasting scope of discovery regarding expert witnesses available in civil cases with article 39.14(b)).  But again, reading request #7 in the context of the discovery order as a whole, we do not construe the request as requiring the State or its experts to create a new document.  Indeed, such a command would likely exceed the authority granted by subsection (a) or (h), which simply requires disclosure of pre-existing evidence already in the State's control.  Stated otherwise, the State is only obligated to disclose what it possesses.

The State as mandamus applicant has the burden of showing that the trial court clearly exceeded the scope of its permissible authority.  We do not believe the State has met the burden of showing that request #7 clearly requires the State to *create* new material as opposed to turning over material *if* that material already exists and is in the State's possession.  We are confident, based on the trial court's diligent order, that Respondent understands the scope of his authority and will not order the State to produce documents not already in existence, and our opinion should

20

not be read as prejudicing the State's right to seek further mandamus review if need be.  Given this, mandamus relief is inappropriate at this time.

### III. CONCLUSION

We do not find that the trial court clearly abused its discretion in issuing the subject discovery order.  Accordingly, we deny relief.

JEFF ALLEY, Chief Justice

August 31, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.
Rodriguez, J., concurring

(Publish)